# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re<br><br>Arts Dairy, LLC<br><br>    Debtor(s)<br><br>Robert McComber<br><br>    Plaintiff(s)<br><br>    v.<br><br>Arts Dairy, LLC, et al.<br><br>    Defendant(s) | **JUDGE RICHARD L. SPEER**<br><br>Case No. 09-3080<br><br>(Related Case: 09-32386) |

## MEMORANDUM OPINION AND DECISION

This cause comes before the Court on the Motion of the Defendant, AgStar Financial Services, to Dismiss Adversary Complaint. In furtherance of its Motion, the Defendant filed supporting Memoranda. Against the Motion to Dismiss, the Plaintiff, Robert McComber, filed a Memorandum in support of his position. The Court has now had the opportunity to review the arguments presented by the Parties, as well as the pleadings submitted in this case. Based upon this review, the Court finds that the Defendant's Motion should be Granted.

### FACTS

On April 14, 2009, the Debtor, Arts Dairy, LLC (hereinafter the "Debtor"), filed a voluntary petition in this Court for relief under Chapter 11 of the United States Bankruptcy Code. At the time

this case was commenced, the Debtor was engaged in the business of operating a dairy farm with approximately 1,250 cows. The Debtor continues to operate this business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

The Plaintiff, Robert McComber (hereinafter the "Plaintiff"), was disclosed by the Debtor as an unsecured creditor, holding a claim in the amount of $95,889.90. The claim was not listed by the Debtor as contingent, unliquidated or disputed. Consideration for the claim was described as "Corn Silage."

It was presented that the claim arose from an agreement, executed on August 29, 2008, between the Debtor and the Plaintiff. (Doc. No. 1, Ex. 1). This agreement provided that the Plaintiff, as the seller, would deliver to the Debtor "300 acres of Corn Silage." *Id.* For this, the Debtor agreed to pay the Plaintiff in 12 monthly installments, beginning in September of 2008. *Id.* Not long thereafter, in accordance with the agreement, the Plaintiff delivered to the Debtor the required silage. *Id.* at ¶ 7. At the time the Debtor filed for bankruptcy relief, however, the Plaintiff had yet to receive full payment for the silage.

In addition to the agreement for silage, the Plaintiff and the Debtor also entered into an undated written arrangement for "Manure application." *Id.* The document evidencing this arrangement scheduled a monthly payment plan, beginning in October of 2008, and extending through September of 2009. *Id.* Also as to the form of the document, it was set forth at the top: "Agreement: Bob McOmber [sic]" *Id.* After the payment schedule, it was then stated, "If you agree with this payment plan, payments will be sent accordingly." *Id.* Thereafter, the document concluded with the name of the Debtor, "Arts Dairy LLC." *Id.*

The Defendant, AgStar Financial Services (hereinafter "AgStar"), is also a creditor of the Debtor, having loaned the Debtor, in December of 2005, the sum of $7,050,000.00. For this loan,

Page 2

Agstar claims to hold valid and perfected, first priority mortgage liens and security interests in substantially all of the Debtor's assets. As evidence of its claim and secured interests, Agstar submitted to the Court various loan documents and UCC filings. (Main Case, 09-32386, Doc. No. 55).

## PROCEDURE

This cause comes before the Court on the Motion of Agstar to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Rule provides that a court is to dismiss a plaintiff's action for "failure to state a claim upon which relief can be granted." In a bankruptcy proceeding, this type of motion is governed by Bankruptcy Rule 7012(b), which makes applicable Rule 12(b)(6) of the Federal Rules of Civil Procedure.

A Motion to Dismiss brought under Rule 12(b)(6) is directed at and concerns solely the complaint. *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). Thus, subject to those documents properly made a part of the pleadings, matters outside the complaint are not the appropriate subject when determining the merits of a motion to dismiss. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997). When looking at a plaintiff's complaint, the court must determine whether it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 2917, 125 L.Ed.2d 612 (1993). For this standard, all factual allegations must be accepted as true, and where an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Pik-Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 886 fn. 2 (6th Cir. 2000). However, while the standard for a Rule 12(b)(6) motion is to be read quite liberally in favor of the plaintiff, the plaintiff is not permitted to rest on bare assertions of unsupported legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

Robert McComber v. Arts Dairy, LLC, et al.
Case No. 09-3080

In this matter, the complaint brought by the Plaintiff is one for declaratory judgment and to establish administrative claim. (Doc. No. 1). The complaint sets forth three causes of action.

In his first cause of action, the Plaintiff asks the Court to determine whether the agreements entered into between the Plaintiff and the Debtor, regarding the corn silage and manure, are executory in nature and whether Agstar has any interest in such contracts or silage. For his second cause of action, the Plaintiff asks that, to the extent that said Agreements are executory in nature, the Debtor be required to accept or reject such agreements in accordance with 11 U.S.C. § 365. The Plaintiff's third cause of action asks the Court to determine whether the Plaintiff is entitled to an administrative claim pursuant to 11 U.S.C. § 503(b)(9).

Adjudicating the causes of action brought by the Plaintiff involves both the determination of the validity, extent, and priority of liens, and the allowance or disallowance of claims against the estate. Such matters are deemed by bankruptcy law to be core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B)/(K). According on the Motion to Dismiss brought by Agstar, this Court has jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

## LEGAL DISCUSSION

The gravamen of the Plaintiff's first cause of actions seeks a determination that the agreement for corn silage, as executed between himself and the Debtor, be classified as an executory contract for purposes of bankruptcy law.

Robert McComber v. Arts Dairy, LLC, et al.
Case No. 09-3080

Under bankruptcy law, a contract which is executory in nature is subject to § 365 of the Code. This section affords the trustee – and by extension, a debtor-in-possession[1] – the power to assume or reject executory contracts (as well as leases) to which the debtor was a party prior to the commencement of the bankruptcy case. 11 U.S.C. § 365(a). The assessment of whether a contract is executory is normally assessed as of the petition date. *COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 381 (2nd Cir. 2008). *Compare In re Pesce Baking Co., Inc.*, 43 B.R. 949, 957 (Bankr. N.D.Ohio 1984) ("critical date for determining the executory nature of a contract is the date on which the bankruptcy court considers the debtor's application.").

For purposes of § 365, the decision to reject a contract is, in effect, a decision to breach the contract. 11 U.S.C. § 365(g). By comparison, the assumption of an executory contract operates so as to require that the other party to the contact continue to perform those obligations remaining due under the contract. *COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 378 (2nd Cir. 2008). In effect, the assumption of an executory contract means that during the pending bankruptcy, the contract will continue to operate according to its terms. Assumption must be done *cum onere* – that is, the contract must be assumed with all of its benefits and burdens. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531-32, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984). Also, to assume a contract, a debtor is required to cure most defaults, to the extent any exist, and to provide adequate assurance of future performance under the contract. 11 U.S.C. § 365(b).

The power to assume or reject executory contracts provides the estate with a significant benefit. By allowing for the assumption of an executory contract, the estate is able to receive the benefit of those contractual obligations which are determined to be profitable for the estate. Conversely, for those obligations which are not anticipated to be profitable, the right to reject an

---

[1] 11 U.S.C. § 1107(a).

Page 5

executory contract allows the estate to relieve itself of the burdensome obligation. *See, e.g., Phar-Mor, Inc. v. Strouss Bldg. Associates*, 204 B.R. 948, 953 (N.D. Ohio 1997) ("The ultimate purpose behind section 365 is to allow a trustee to pick and choose among the debtor's agreements and assume those which benefit the estate and reject those which do not.").

An executory contract which is rejected gives rise to a prepetition claim for any damages resulting from the rejection. 11 U.S.C. § 502(g). The claim is deemed to be a general, unsecured claim, and may be treated as such. *In re American HomePatient, Inc.*, 414 F.3d 614, 617 (6th Cir. 2005). On the other hand, if a contract is assumed, any liability thereafter will constitute an administrative expense. *Bildisco*, 465 U.S. at 531-32, 104 S.Ct. at 1199. Payments on an assumed contract must also be made according to the terms of the contract, thus providing an exception to the general rule that a debtor-in-possession is not authorized to pay pre-petition debts. 11 U.S.C. § 365(b).

It is based on these particular attributes – particularly the last regarding payment – against which the Plaintiff urges the Court to find that the Debtor's agreement to pay in monthly installments for the delivered corn silage be deemed an executory contract.

The term executory contract is not defined in § 365 nor anywhere in the Bankruptcy Code. To fill the void, courts have often applied the definition formulated by Professor Vern Countryman. *See, e.g., Cameron v. Pfaff Plumbing & Heating, Inc.*, 966 F.2d 414, 416 (8th Cir. 1992). This definition provides that an executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other."[2]

---

[2] Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn. L.Rev. 439, 460 (1973).

Page 6

For this Court, the Countryman definition of an executory contract is generally applicable when determining whether a contract is executory for purposes of § 365. First, consistent with the Countryman definition, the Supreme Court, looking to the legislative history of § 365(a), explained that "Congress intended the term to mean a contract on which performance is due to some extent on both sides." *Bildisco*, 465 U.S. at 522, fn. 6, *citing* H.R.Rep. No. 95-595, p. 347 (1977), and S.Rep. No. 95-989, p. 58 (1977). Later, quoting this same language, the Sixth Circuit Court of Appeals noted that "Congress apparently had in mind the definition of executory contracts set forth [by] Countryman. . . ." *Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469, 471 fn. 2 (6th Cir. 1989). Relying on this decision of the Sixth Circuit in *In re Terrell*, the Bankruptcy Appellate Panel for the Sixth Circuit has also looked favorably upon Countryman's definition of an executory contract, applying it to find that land installment contracts governed by Ohio common law are 'executory contracts' for purposes of § 365. *O'Brien v. Ravenswood Apartments, Ltd. (In re Ravenswood Apartments, Ltd.)*, 338 B.R. 307 (6th Cir. B.A.P. 2006).

Notwithstanding, Countryman's definition of an executory contract cannot be said to be the exclusive method through which the existence of an executory contract is determined. In an earlier decision, captioned *Chattanooga Memorial Park v. Still, Trustee (In re Jolly)*, the Sixth Circuit Court of Appeals held that, while the definition proposed by Professor Vern Countryman is helpful, it is not controlling for purposes of § 365. 574 F.2d 349 (6th Cir. 1978). The Court in *In re Jolly* instead applied a functional approach. Under a functional approach, the Court in *In re Jolly* explained that when assessing whether a contract is executory, one should "work backward, proceeding from an examination of the purposes rejection is expected to accomplish." *Id.* at 351. This decision has never been expressly overturned or otherwise overruled. Consequently, along side the Countryman definition, the functional approach would appear to remain good law in this judicial circuit, the Sixth Circuit. *In re Cardinal Industries, Inc.*, 146 B.R. 720, 729 (Bankr. S.D.Ohio 1992).

Page 7

Robert McComber v. Arts Dairy, LLC, et al.
Case No. 09-3080

Regardless of which approach is applied, however, an executory contract will not exist where the only remaining performance to be rendered is the payment of money. 31 Williston on Contracts § 78:41 (4th ed.) (listing cases). As previously noted: "Such contracts have never been treated as executory for bankruptcy purposes and their treatment as such would only cause procedural problems which might perpetrate inequities among creditors." *In re Norquist*, 43 B.R. 224 (Bankr. E.D. Wash. 1984). *See also In re FCX, Inc.*, 60 B.R. 405, 411 (E.D.N.C. 1986) (an executory contract under § 365 contemplates the debtor obtaining some consideration from the person with whom it is contracting that is essential to protect its best interests). This represents the situation presented with respect to the agreement between the Plaintiff and the Debtor concerning the corn silage.

When this bankruptcy case was commenced, the Plaintiff had completed his delivery of the corn silage to the Debtor in accordance with their agreement. Thereafter, the only obligation which remained to be performed was for the Debtor to continue to pay the Plaintiff in accordance with their agreement which called for payment on the silage to be made in monthly installments. Accordingly, for this reason, the Parties' agreement for corn silage cannot be construed as an executory contract for purposes of § 365.

Against this finding, the Plaintiff set forth that his agreement to provide the Debtor with corn silage should not be viewed in isolation, but should instead be considered in conjuncture with their agreement for the application of manure. In the words of the Plaintiff, "at the commencement of this case a reasonable interpretation of [the corn silage agreement] was that the Debtor was authorized to spread manure on the land of the Plaintiff in exchange for payment. If so, then the Plaintiff would assert that [the corn silage agreement] is executory in nature as performance remains due to some extent on both sides." (Doc. No. 11, at pg. 4).

As to form, the position put forth by the Plaintiff, that his agreements with the Debtor regarding the corn silage and manure application should be construed together, does not find support.

Page 8

Robert McComber v. Arts Dairy, LLC, et al.
Case No. 09-3080

Each agreement is set forth in a separate document. Further, nothing connects the documents together. For example, neither document refers to the other. Similarly, there is nothing in the respective documents which indicate that they were executed together; noticeably, the monthly payment schedules reflected in each of the documents commence at different times, thus leading to the inference that the documents were executed at different times. Each document also contains a different typeface.

Even so, different obligations, contained in separately executed documents, can still be construed as a single contract for purposes of assumption or rejection under § 365. *In Re Stanton*, 248 B.R. 823, 830 (9th Cir. B.A.P. 2000); *Kopel v. Campanile (In re Kopel)*, 232 B.R. 57, 65 (Bankr. E.D.N.Y. 1999). The question in this regard is whether the contracts are divisible or indivisible. If the agreements are divisible, each must be viewed separately when assessing whether the agreements are executory for purposes of § 365; if the agreements, however, are indivisible, then they may be viewed together when assessing the executoriness of the agreements under § 365. *See, e.g., In re Sun City Invs., Inc.*, 89 B.R. 245, 247-48 (Bankr. M.D.Fla.1988).

Applicable nonbankruptcy law – here Ohio law – controls the determination of whether agreements are divisible or indivisible. *In re Ritchey*, 84 B.R. 474, 476 (Bankr. N.D.Ohio 1988). Under Ohio law, whether a contract is indivisible or divisible depends generally upon the intention of the parties. *Material Contractors, Inc. v. Donahue*, 14 Ohio St.2d 19, 22, 235 N.E.2d 525, 528 (1968), citing *Huntington & Finke Co. v. Lake Erie Lumber & Supply Co.*, 109 Ohio St. 488, 143 N.E. 132 (1924). Considerations helpful in ascertaining the parties' intent include: (1) the nature and purpose of the agreements, including whether the agreements are contained in a single or multiple instruments; (2) whether the same consideration was paid for each of the agreements or whether the consideration was separate and distinct; and (3) whether the agreements are interrelated or independent. *See DePugh v. Mead Corp*, 79 Ohio App.3d 503, 513, 607 N.E.2d 867, 873 (1992). *See also In re Apache Products Company*, 293 B.R. 545, 547 (Bankr. M.D.Fla.2003).

Page 9

Robert McComber v. Arts Dairy, LLC, et al.
Case No. 09-3080

Concerning the first consideration, it has already been noted that the agreements at issue were contained in two separate documents, thus tending to show that the Parties' agreements concerning the corn silage and manure application are divisible. The same is true of the second consideration, with nothing indicating that payment for the corn silage was dependent upon the Parties' performing their respective obligations under the agreement for the application of the manure. For example, it stands to reason that had the Plaintiff failed to substantially perform his obligation with respect to the manure agreement, the Debtor would still have been obligated to pay the Plaintiff for the corn silage.

The final consideration, whether the agreements are interrelated or dependent, likewise bends toward divisibility. Under this consideration, the question is whether there has been "a single expression of mutual assent to all the promises as a unit, or whether the parties expressed their assent separately to the various promises." 15 Williston on Contracts § 45:3 (4th ed.). For this question, what stands out prominently is that each agreement involved a completely separate subject matter. One agreement was for corn silage; the other was for the application of manure. There is, thus, nothing to even remotely suggest that the Parties assented to their performance in the respective agreements as a whole unit.

The fact, as the Plaintiff points out, that the Debtor was the drafter of the documents, thus implicating the doctrine of *contra proferentum*, does nothing to change the divisible nature of the Parties' two agreements. The doctrine of *contra proferentum* holds that ambiguities in contracts are to be construed against the drafter of the document. In this case, however, at least insofar as it concerns the divisible nature of the Parties' agreements, there are no ambiguities. Instead, for those reasons just outline, the whole structure and substance of the Parties' agreements show that they are each divisible contracts.

Robert McComber v. Arts Dairy, LLC, et al.
Case No. 09-3080

In sum, the Parties' agreement regarding corn silage, where the only performance remaining due concerns the payment of money, does not qualify as an executory contract for purposes of § 365 of the Bankruptcy Code. Further, the Plaintiff cannot utilize his agreement with the Debtor, regarding the application of manure, to transform the corn silage agreement into an executory contract, with each of the respective agreements being divisible contracts. One final note: Even assuming the agreements were indivisible, a fundamental problem still remains: although the record in this case is incomplete, it would appear that the only obligation remaining due on the manure agreement was for the payment of money, thus precluding this agreement from being executory.

Accordingly, for these reasons, the Plaintiff, with respect to the corn silage agreement, has no viable claim that the agreement is executory for purposes of § 365. This holding also moots the Plaintiff's second cause of action whereby he had asked the Court to require the Debtor to either assume or reject the corn silage agreement as an executory contract. On the Plaintiff's first cause of action, however, one issue still remains.

As a part of his first cause of action, the Plaintiff had also asked the Court to determine whether Agstar had any interest in the Debtor's corn silage. Agstar claims to hold valid and perfected, first priority mortgage liens and security interests in substantially all of the Debtor's assets, including the corn silage. The Plaintiff made no claim of any security interest.

Under Ohio Revised Code § 1302.42(B), it is provided, in relevant part, that "[u]nless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods, despite any reservation of a security interest . . . ." Once title passes to a buyer, the property becomes subject to any security interest or mortgage lien held by a third party in the buyer's property. *See Commercial Union Ins. Co. v. General Motors Acceptance Corp.*, Warren App. No. CA87-10-086, unreported, 1988 WL 82404 *2 (Aug. 8, 1988).

Page 11

Robert McComber v. Arts Dairy, LLC, et al.
Case No. 09-3080

In this matter, the Court has reviewed the documents evidencing the security interests and mortgage liens claimed by Agstar. Based on this review, the Court could not discern any patent defects in Agstar's position that it holds valid secured interests in substantially all of the Debtor's property. As such, there is no reason for this Court to question, at this time, Agstar's claim that, by virtue of O.R.C. § 1302.42(B), its secured interests extend to the corn silage delivered by the Plaintiff to the Debtor. If the Plaintiff wishes to specifically avoid Agstar's secured interests in the Debtor's property, he should commence an adversary proceeding to determine lien validity, pointing specifically to the defects giving rise to such a claim. 11 U.S.C. § 506; FED.R.BANKR.P. 7001(2). The Court now turns to address the Plaintiff's third and remaining cause of action.

The Plaintiff's third cause of action asks the Court to determine whether, for the delivery of the corn silage, the Plaintiff is entitled to an administrative claim pursuant to 11 U.S.C. § 503(b)(9). This section of the Bankruptcy Code provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including-
>
> > (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

To be entitled to an administrative expense claim under this provision, the claimant must establish the existence of three elements: (1) goods were sold; (2) the goods must have been received by the debtor within 20 days prior to the commencement of the bankruptcy case; and (3) the goods must have been sold in the ordinary course of business. *In re Goody's Family Clothing Inc.*, 401 B.R. 131, 136 (Bankr. D.Del. 2009).

The facts as they stand in this case preclude the Plaintiff from establishing the existence of the second element. Not long after August 29, 2008, when the Parties executed their agreement

Page 12

Robert McComber v. Arts Dairy, LLC, et al.
Case No. 09-3080

regarding the corn silage, the Debtor received the silage. The Debtor, however, did not commence this bankruptcy case until the following year, on April 14, 2009, an interval of time significantly greater than 20 days.

For all these reasons, the Court finds the Motion to Dismiss filed by AgStar to have merit. In reaching the conclusions found herein, the Court has fully considered the Parties' pleadings as well as all of the arguments of counsel, regardless of whether they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Motion of the Defendant, Agstar Financial Services, to Dismiss Adversary Complaint, be, and is hereby, GRANTED.

It is **FURTHER ORDERED** that this Adversary Complaint, be, and is hereby, DISMISSED.

Dated: September 21, 2009

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 13

# CERTIFICATE OF SERVICE

Copies were mailed this 21th day of September, 2009 to:

Agstar Financial Services
5262 N. Corp. Rd.
Mankato, MN 56001


Nancy A Valentine
Hahn, Loeser & Parks LLP
200 Public Square
Suite 2800
Cleveland, OH 44114

Christopher B. Wick
Hahn Loeser + Parks LLP
200 Public Square
Suite 2800
Cleveland, OH 44114

Arts Dairy, LLC
5624 Elm Sugar Road
Convoy, OH 45832

Nathan A. Hall
Shumaker, Loop & Kendrick, LLP
1000 Jackson
Toledo, OH 43604-5573

Robert McComber
1474 Richey Road
Scott, OH 45886

Steven L Diller
124 E Main St
Van Wert, OH 45891

                                      /s/Dawn Serna-Gensch
                                  Deputy Clerk, U.S. Bankruptcy Court